UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF ILLINOIS

In Re                                             )
                                                  )        Case No.      24-40450
LPB MHC, LLC                                      )
d/b/a Sam C. Mitchell & Assocs.,                  )
                                                  )        Chapter 11
                    Debtor.                       )

---

## O P I N I O N

Before the Court are the Debtor's objections to claims 7-1 and 8-1 filed by Farmers State Bank of Alto Pass on behalf of Brandon Zanotti and BJZ Law, LLC, respectively. Because there is no authority for Farmers State Bank to have filed the claims, the objections will be sustained and the claims will be disallowed.

## I.      Factual Background

The Debtor, LPB MHC, LLC d/b/a Sam C. Mitchell & Associates, filed its voluntary petition under Chapter 11 Subchapter V on November 5, 2024. In its subsequently filed schedules, the Debtor listed Farmers State Bank of Alto Pass ("Farmers State Bank") as potentially holding a claim against it in the amount of $2.4 million secured by "inventory, chattel paper, accounts, equipment, general intangibles, and fixtures." The debt was marked as disputed. Brandon Zanotti is listed as the holder of a disputed unsecured claim against the Debtor in the amount of $275,000.

The Debtor is a law firm engaged in the practice of law concentrating in personal injury and workers' compensation cases. The law firm was owned and operated by member managers LPB Law, LLC, controlled by Attorney Lance P. Brown, and MHC Law, LLC, controlled by Attorney Matthew H. Caraway, until August 1, 2022. On that date, a Revised Operating Agreement was signed, adding new member manager, BJZ Law, LLC, controlled by Brandon J. Zanotti. Ownership of the Debtor was divided equally between the three member managers, with each holding a 33.33% interest upon execution of the Revised Operating Agreement. According to documents included in the filings of all parties, BJZ Law paid $2.4 million for its interest in the Debtor financed by Farmers State Bank where Mr. Zanotti served on the board of directors. The $2.4 million payment was made by BJZ Law on October 12, 2022. The loan from Farmers State Bank was secured by a commercial security agreement executed by Mr. Zanotti on behalf of BJZ Law, Mr. Zanotti's personal guarantee, a life insurance policy on his life, and real estate owned by SCM Real Estate LLC, a company formed and managed by Mr. Brown, Mr. Caraway, and Mr. Zanotti. The loan was also allegedly secured by a commercial security agreement signed by all three members of the Debtor. As part of the transaction, Mr. Zanotti began practicing law as an employee of the Debtor and was compensated accordingly.

In early March 2024, Mr. Zanotti informed Mr. Caraway that the FBI had approached him in September 2022 regarding a real estate transaction he had been involved in and that he was being investigated for bank fraud and other potential crimes related to the sale. Mr. Zanotti pleaded guilty to federal felony

charges on March 21, 2024, and was later sentenced to probation for two years. He is currently subject to disciplinary proceedings brought by the Illinois Attorney Registration and Disciplinary Commission. The Debtor has alleged that Mr. Zanotti was terminated as an employee at a meeting held April 30, 2024, and that BJZ Law was terminated as a member of the Debtor effective May 10, 2024.

After Mr. Zanotti's guilty plea and employment termination, BJZ Law defaulted on the loan from Farmers State Bank. In an effort to collect on the obligation owed to it, Farmers State Bank turned to the Debtor. The bank sent notices to a number of attorneys representing defendants in cases in which the Debtor represented the plaintiffs. Matters escalated to the point that Farmers State Bank filed a lawsuit in Williamson County, Illinois, seeking a declaratory judgment that its collection efforts were appropriate, quickly followed by a request for a temporary restraining order against the Debtor and the issuance of over 100 subpoenas to defense counsel in cases in which the Debtor represented plaintiffs. The Debtor filed its Chapter 11 bankruptcy case to stop Farmers State Bank's conduct that it believed interfered with its ability to represent its clients.

Farmers State Bank promptly filed a claim on its own behalf in the amount of $2,468,544.53, based on "Money Loaned and Commercial Security Agreement," secured by real estate and a "Blanket UCC which includes accounts receivable and earned attorney fees, Commercial Security Agreement, 1 Mortgage which provides a first lien on two commercial properties in Franklin County, IL and a second mortgage that provides a second lien position on a commercial

property in Williamson County, IL, and UCC filings, assignment of term life insurance policy issued by Pekin Life Insurance Company insuring the life of Brandon J. Zanotti."

On January 13, 2025—one day before the deadline for filing proofs of claims other than for a governmental unit—Farmers State Bank filed two more claims, one on behalf of Brandon Zanotti for an unknown amount and the other on behalf of BJZ Law for not less than $2.5 million. The claims each state that they are being filed on behalf of the respective creditors pursuant to the attached documents, are marked as not having been acquired from someone else, and list addresses of Farmers State Bank and its attorney as to where payments and notices should be sent. Both claims are signed by Farmers State Bank's attorney as "the creditor's assignee and attorney in fact or authorized agent."[1]

The attachments to claim 7-1 filed on behalf of Brandon Zanotti consist of: (1) an additional notice address belonging to Brandon Zanotti's attorney of record in the bankruptcy case and adversary proceeding against him; (2) a narrative in support of the claim; (3) the Revised Operating Agreement of the Debtor dated August 1, 2022; (4) a notification of assignment letter addressed to the Debtor from Farmers State Bank; (5) a commercial security agreement dated October 12, 2022, and executed by Brandon Zanotti on behalf of BJZ Law; (6) a commercial security agreement dated October 12, 2022, and executed by Brandon Zanotti on his own behalf; (7) a commercial guaranty dated October 12,

---

[1] Part 3 of Official Form 410 Proof of Claim directs the person signing the form to mark the appropriate box regarding their authorization to do so. In both proofs of claim the language next to the box marked was changed from "I am the creditor's attorney or authorized agent" to "I am the creditor's assignee and attorney in fact or authorized agent."

2022, and executed by Brandon Zanotti on his own behalf; and (8) a commercial security agreement dated October 12, 2022, and executed by Lance Brown, Matthew Caraway, and Brandon Zanotti on behalf of the Debtor.[2] The basis of the claim is described as "[s]eizure without compensation by the Debtor of Brandon Zanotti's company's 1/3 ownership in Debtor law firm, and claims for tortious interference with expectancy, defamation, breach of fiduciary duty, and conversion." The proof of claim states that it is secured by "constructive trust or equitable lien based on the seizure of BJZ Law, LLC's 1/3 ownership in Debtor law firm, Brandon Zanotti being the 100% owner of BJZ Law, LLC" and identifies the "Revised Operating Agreement" as the basis for perfection.

Proof of Claim 8-1 filed on behalf of BJZ Law similarly includes the following attachments: (1) an additional notice address belonging to BJZ Law's attorney of record in the bankruptcy case and adversary proceeding against it; (2) a narrative in support of the claim; (3) the Revised Operating Agreement of the Debtor dated August 1, 2022; (4) a notification of assignment letter addressed to the Debtor from Farmers State Bank; (5) a commercial security agreement dated October 12, 2022, and executed by Brandon Zanotti on behalf of BJZ Law; (6) a business loan agreement dated October 12, 2022, and executed by Brandon Zanotti on behalf of BJZ Law; (7) a limited liability company resolution to borrow/grant collateral dated October 12, 2022, and executed by Brandon Zanotti as manager of BJZ Law; and (8) a commercial security

---

[2] The Debtor has disputed whether Lance Brown and Matthew Caraway executed the commercial security agreement on behalf of the Debtor. Final determination of that issue is not necessary to resolve the claim objections.

agreement dated October 12, 2022, and executed by Lance Brown, Matthew Caraway, and Brandon Zanotti on behalf of the Debtor. The basis of the claim is described as "[s]eizure without compensation by the Debtor of BJZ Law, LLC's 1/3 ownership in Debtor law firm." The proof of claim states that it is secured by "constructive trust or equitable lien based on the seizure of creditor's 1/3 ownership in the Debtor" and identifies the "Revised Operating Agreement" as the basis for perfection.

In January 2025, the Debtor filed two separate adversary proceedings— one against Brandon Zanotti and BJZ Law and the other against Farmers State Bank. The complaint in the Zanotti adversary proceeding asserted claims of breach of contract in relation to the Revised Operating Agreement, fraudulent inducement, breach of fiduciary duty, subrogation, unjust enrichment, and declaratory relief as to the termination of BJZ Law and Brandon Zanotti's membership, employment, or other affiliation with the Debtor. In response to the complaint, the Zanotti parties filed a motion to dismiss and compel arbitration under the terms of the Revised Operating Agreement. Those matters remain pending.

The complaint in the Farmers State Bank adversary proceeding asserted counts objecting to the claims filed by Farmers State Bank on its own behalf as well as those filed on behalf of Brandon Zanotti and BJZ Law. The complaint also included counts for "libel and other tortious conduct" based on Farmers State Bank's communication with defense counsel in cases involving the Debtor as plaintiff's counsel, equitable subordination of Farmers State Bank's claims, and

other declaratory relief as to what claim or interest Farmers State Bank has in the Debtor's property. Farmers State Bank filed an answer to the complaint, followed immediately by a motion for partial summary judgment asking the Court to dismiss the libel and other tortious conduct count and the equitable subordination count with prejudice and to dismiss the remaining counts without prejudice. The motion for summary judgment was recently denied. *See LPB MHC, LLC v. Farmers State Bank of Alto Pass (In re LPB MHC, LLC)*, 2025 WL 1778767, at *1 (Bankr. S.D. Ill. June 26, 2025).

In the main bankruptcy case, the Debtor filed objections to claims 7-1 and 8-1 filed by Farmers State Bank on behalf of Brandon Zanotti and BJZ Law, respectively. The claim objections, with notice directed only to Farmers State Bank's attorney who signed and filed the claims, are based on: (1) the claims not being debts due and owing from the Debtor; (2) the claims being subject to the Debtor's rights to subrogation and/or setoff; (3) the claims not being supported by documentation available to the Debtor; (4) the alleged assignors, Brandon Zanotti/BJZ Law, having breached and not fulfilled their obligations under their agreement with the Debtor; (5) the claims being legally insufficient as they do not specify the amount allegedly owed; (6) Farmers State Bank not having demonstrated standing to bring the claims under Bankruptcy Rule 3001(b), as neither the notification of assignment letter nor any other documents attached to the claims shows a transfer of the claims; and (7) the claims are to be invalidated, lessened, and/or subordinated through the remedies sought in the adversary proceedings against the Zanotti defendants. The objection to claim 7-

1 for Brandon Zanotti includes an additional basis: the supporting documents refer only to BJZ Law as an entity with an alleged right to payment from the Debtor, not Brandon Zanotti.

At a hearing on a variety of pending matters held on the same day that the claim objections were filed, the Court noted, among other things, the filing of the objections earlier that day, the issues that it saw with the claims, and the fact that Brandon Zanotti had returned ballots on behalf of himself and BJZ Law for the Debtor's then-pending proposed plan despite not having filed claims for himself and BJZ Law. As to claims 7-1 and 8-1, the Court questioned what procedural authority there was for Farmers State Bank to have filed claims on behalf of Brandon Zanotti and BJZ Law in the manner and under the circumstances that it did and how the validity of those claims could affect the disposition of the adversary cases. The Court also noted that the Debtor had directed the claim objections only to the bank's attorney but should have also directed its objections to Brandon Zanotti and BJZ Law and their attorney.

The Debtor subsequently filed additional objections to claims 7-1 and 8-1, this time specifically directed to Brandon Zanotti and BJZ Law in care of their attorney. The objections set forth most but not all the same reasons stated in the earlier objections directed to Farmers State Bank, and they included an additional basis for objection based on the Court's comments at hearing. Specifically, the objections assert that the claims were "not filed by the proper party pursuant to Rule 3001(b)" requiring that the proof of claim be executed by the creditor or creditor's authorized agent in that the bank was not acting as BJZ

Law or Brandon Zanotti's authorized agent in filing the claim, and therefore "no proper proof of claim was filed" for the Zanotti parties prior to the claims bar date.

Brandon Zanotti and BJZ Law then filed a Motion for Leave to Extend Claims Bar Date, for Leave to File Proof of Claim in Debtor's Chapter 11 Proceeding, and for Leave to File Counterclaim, along with a memorandum of law in support of the motion. Their attorney also filed a proof of claim on behalf of BJZ Law. No claim was or has been filed by Brandon Zanotti for himself. At a hearing on the other pending matters in the case and proceedings, the Court noted the motion for leave filed by the Zanotti parties and said that it would not be taken up until the issues surrounding the Zanotti claims filed by Farmers State Bank were resolved.

The parties have filed multiple responses and replies to the pending claim objections. Counsel for Brandon Zanotti and BJZ Law filed—on behalf of BJZ Law—a memorandum of law in support of a response to the claim objection directed at BJZ Law but did not file a related response. She later filed—on behalf of Brandon Zanotti—a response to the claim objection directed at Brandon Zanotti, but it was docketed as a response on behalf of Mr. Zanotti and BJZ Law to the objection directed at Farmers State Bank. The bank filed separate responses to each set of objections to the claims it filed on behalf of the Zanotti parties, followed by an amended response to the objection to the claim it filed on behalf of BJZ Law. Finally, the Debtor filed a reply in support of its objections to

the claims.[3] The Debtor's objections to claims 7-1 and 8-1 filed on behalf of Brandon Zanotti and BJZ Law by Farmers State Bank are ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate and the allowance or disallowance of claims against the estate are core proceedings. 28 U.S.C. §157(b)(2)(A), (B). The issues before the Court arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.    Legal Analysis

The claim objections and the adversary complaint filed by the Debtor against Farmers State Bank cite numerous reasons—both procedural and substantive—why the claims filed by the bank for Brandon Zanotti and BJZ Law should be disallowed. This Opinion and related Order will be limited to the

---

[3] A significant portion of the Debtor's reply brief is dedicated to the issue of whether claim 9-1 filed on behalf of BJZ Law by its attorney should be disallowed.  But no claim objection has been filed by the Debtor as to that claim and, as set forth above, the request to late file the claim filed by BJZ Law's attorney has not yet been heard. The Court will not address issues related to claim 9-1 in this Opinion.

procedural issue of whether there is any authority for Farmers State Bank to have filed the claims. Because this Court finds that there is no such authority, both claims will be disallowed on those procedural grounds and the other issues will not be reached.

Section 501(a) authorizes a creditor to file a proof of claim for itself. 11 U.S.C. §501(a). Subsection (b) of the same section provides that "[i]f a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim." 11 U.S.C. §501(b). And subsection (c), in turn, authorizes the debtor or the trustee to file a proof of claim for a creditor that has not timely done so. 11 U.S.C. §501(c). The substance of these provisions is also the subject of Bankruptcy Rules 3001, 3004, and 3005.

Bankruptcy Rule 3001(b) provides that "[o]nly a creditor or the creditor's agent may sign a proof of claim—except as provided in Rules 3004 and 3005." Fed. R. Bankr. P. 3001(b). Rules 3004 and 3005 set the parameters for the debtor, trustee, or "an entity that, along with the debtor, is or may be liable to the creditor or has given security for the creditor's debt" to file a claim when the creditor fails to file its own claim. Fed. R. Bankr. P. 3004, 3005. Farmers State Bank is neither the debtor nor the trustee. Likewise, there is no argument to be made that Farmers State Bank is liable with the Debtor to Mr. Zanotti or BJZ Law or has given security for a debt owed to Mr. Zanotti or BJZ Law. To the contrary, Farmers State Bank is the creditor to whom Mr. Zanotti, BJZ Law, and the Debtor are alleged to owe a debt.

Farmers State Bank attached a narrative to each of the claims it filed wherein it asserted that it should be the recipient of any payments made on the claims. It also cited two cases that it said provided support of its apparent proposition that creditors may file claims for other creditors. *See Kreidle v. Dep't of Treasury (In re Kreidle)*, 145 B.R. 1007 (Bankr. D. Colo. 1992); *In re Bender Shipbuilding & Repair Co.*, 2012 WL 4086445, at *1 (Bankr. S.D. Ala. Sept. 17, 2012). Unfortunately for Farmers State Bank, neither case stands for the proposition that creditors may routinely file claims for other creditors as suggested in the bank's narrative; neither case even discusses the issue. In its further briefing, Farmers State Bank no longer makes the argument and does not continue to rely on either case.

Farmers State Bank and the Zanotti parties now primarily argue that the bank had express and implied authority to file claims on behalf of Mr. Zanotti and BJZ Law as "the creditor's agent" under Rule 3001(b). In making the argument, the parties highlight a recent change in the Rule language removing the qualification that an agent be "authorized," suggesting that the change relaxed what had previously been interpreted as a requirement of express authority to now include implied authority. But the claim proponents make the assertion without any citation to authority, and the 2024 Advisory Committee Note to Rule 3001 suggests that the change was "intended to be stylistic only" and done "as part of the general restyling of the Bankruptcy Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Bankr. P. 3001 advisory committee's note to 2024

amendment. The Court is not persuaded that the recent amendment to Rule 3001 substantively changed the requirements for who may file claims for creditors. Even so, express and implied authority are both premised on actual authority; the former is shown through words, and the latter is established through circumstantial evidence. *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 939 (7th Cir. 2016); *Rasgaitis v. Waterstone Fin. Group, Inc.,* 2013 IL App (2d) 111112, ¶48, 985 N.E.2d 621, 635. Ultimately, the claim proponents failed to establish that Farmers State Bank had actual authority to file claims 7-1 and 8-1 on behalf of Brandon Zanotti and BJZ Law. Because the claims are based on different underlying facts, a separate discussion of each is appropriate.

### A. Claim 7-1: Brandon Zanotti

According to Farmers State Bank, the basis for asserting claim 7-1 on behalf of Brandon Zanotti stems from the commercial guaranty he signed as guarantor of the loan to BJZ Law. Specifically, Farmers State Bank relies on the provisions of the agreement by which Mr. Zanotti authorized Farmers State Bank to "release, substitute, agree not to sue, or deal with any one or more of [BJZ Law's] sureties, endorsers, or other guarantors on any terms or in any manner [Farmers State Bank] may choose[.]" Based on that and surrounding provisions in the guaranty, paired with the commercial security agreement executed by the Debtor, Farmers State Bank contends that Mr. Zanotti authorized it to "deal with" the Debtor as BJZ Law's guarantor or surety in any way Farmers State

Bank deemed appropriate, including filing a claim against the Debtor on Mr. Zanotti's behalf. Farmers State Bank overstates its position.

To the extent that the provisions in the commercial guaranty authorizing Farmers State Bank to "deal with" the Debtor to collect the guaranteed debt include authority to file a claim in the bankruptcy case, Farmers State Bank had already done so by filing a proof of claim on its own behalf based on the commercial security agreement and underlying debt of BJZ Law. If the claim filed on behalf of Brandon Zanotti—but naming Farmers State Bank as the party to whom payment should be sent—is indeed meant to deal with the same underlying debt, it is unnecessary and duplicative and properly denied on that basis. *In re GGSI Liquidation, Inc.*, 2016 WL 6808510, at *3 (Bankr. N.D. Ill. Nov. 14, 2016). But that is not on what claim 7-1 purports to be based. Rather, the claim states that it is based on causes of action personal to Brandon Zanotti not mentioned specifically or generically in the commercial guaranty, the commercial security agreement, or any other document. The narrative attached to the proof of claim confirms that the claim is not based on the BJZ Law loan debt but rather on causes of action Brandon Zanotti might have against the Debtor.

The commercial guaranty provided security for the BJZ Law loan in the form of Mr. Zanotti's agreement to be personally liable for the debt. It did not, however, give Farmers State Bank a security interest in Mr. Zanotti's property or assign any of his personal rights, interests, or claims. Mr. Zanotti did execute a separate commercial security agreement, but that agreement only gave Farmers State Bank a security interest in the collateral described—a term life insurance

policy on the life Mr. Zanotti and the products and proceeds thereof; the commercial security agreement did not include accounts or general intangibles. Simply put, neither the commercial guaranty nor any other document executed by Brandon Zanotti in his individual capacity gave Farmers State Bank a security interest in whatever claims Mr. Zanotti might have against the Debtor, and none of the attachments to the proof of claim or otherwise in the case record can be reasonably interpreted as authorizing Farmers State Bank to assert such claims on its own or on Mr. Zanotti's behalf.[4]

Farmers State Bank similarly contends that the provision in the commercial guaranty authorizing it to "deal with co-obligors" includes the right to assert claims against the Debtor for indemnification of its employees under the provisions of the Revised Operating Agreement, which it says is "inextricably intertwined" with Mr. Zanotti's personal guarantee. But, again, the guaranty did not give Farmers State Bank an interest in any claims Mr. Zanotti might have against the Debtor, and the authorization to "deal with" others cannot reasonably be construed as creating a right for Farmers State Bank to assert such interest. Further, the indemnification provisions of the Revised Operating

---

[4] Importantly, even if the commercial security agreement signed by Brandon Zanotti covered general intangibles, it would not have covered the post-signing tort claims which form the basis for claim 7-1 filed by the bank. Any of the alleged wrongdoing by the Debtor listed in the claim most certainly occurred, if at all, in 2024 after Mr. Zanotti pleaded guilty to a federal felony and his employment was terminated by the Debtor. Under the Illinois Uniform Commercial Code, any such claims would be commercial torts. 810 ILCS 5/9-102(a)(13). Commercial tort claims are not included in generic categories such as general intangibles; a specific description of the claim must be included in the documents to create a security interest. 810 ILCS 5/9-108(e). Further, commercial tort claims arising after a commercial security agreement is signed would not be picked up by an after-acquired-property provision of the security agreement. 810 ILCS 5/9-204(b)(2). Finally, if Mr. Zanotti had a claim for wages, salary or other compensation against the Debtor—whether or not based on an employment contract—the provisions of Article 9 would not apply to an assignment of such claims. 810 ILCS 5/9-109(d)(3). None of these provisions were discussed by Farmers State Bank or the Zanotti parties in their briefs; they all apparently just assumed that the bank had a lien on all assets of Mr. Zanotti and could proceed accordingly.

Agreement are limited to "liability or damage incurred by reason of any act performed or omitted to be performed . . . in connection with" or "arising out of or incidental to the business of" the Debtor. Farmers State Bank argues that the act of Mr. Zanotti guaranteeing the BJZ Law loan was done "in connection with the business of" the Debtor because the Debtor was the ultimate recipient of the loan proceeds. Farmers State Bank's argument stretches the bounds of credulity.

In Illinois, indemnity provisions are to be strictly construed and given a fair and reasonable interpretation based on the plain language of the provision and contract as a whole in the context of the surrounding circumstances. *Charter Bank v. Eckert*, 223 Ill. App. 3d 918, 925, 585 N.E.2d 1304, 1310 (5th Dist. 1992). Although quite broad, the indemnification provisions here—which apply to not only members and managers but also employees of the Debtor—do not appear to cover personal debts of the Debtor's members or employees, and no reference is made to the BJZ Law loan debt specifically. The BJZ Law loan proceeds were used to buy into the Debtor. Brandon Zanotti's personal liability for the debt is connected to the Debtor only to the extent it opened the door for him and BJZ Law to participate in the business of the Debtor. Further, the provision in Article 8 of the Revised Operating Agreement is expressly limited to matters in which the "Indemnitee acted in good faith and in a manner he reasonably believed to be in, or not opposed to, the interests of" the Debtor. Even if construed as being "in connection with the business of" the Debtor, Mr. Zanotti's failure to satisfy his obligations under the guaranty could not be reasonably interpreted as consistent with the Debtor's interests.

Nor can the indemnification provisions be fairly and reasonably interpreted as a guarantee of personal debts of the Debtor's members or employees in the context of the surrounding circumstances. The debt at issue here was secured in several ways; in addition to each party executing security agreements in favor of Farmers State Bank, Brandon Zanotti separately guaranteed the debt in writing. The absence of a guaranty executed by the Debtor is telling, especially given that Farmers State Bank purportedly obtained a separate security agreement executed by the Debtor without including language or otherwise taking steps to obtain a guarantee from the Debtor. Applying the indemnification provisions to impose liability on the Debtor under the circumstances would lead to a perverse result. Indeed, if the indemnification provision were construed to cover Mr. Zanotti's personal guarantee here, what else might such a provision cover? a default on a personal loan of an employee for a vehicle that they need to get to work? credit card debt that an employee incurs to purchase work attire? The Court finds no support for Farmers State Bank's interpretation of the indemnification provisions of the Revised Operating Agreement as a means of imposing liability on the Debtor for Brandon Zanotti's personal obligation on the BJZ Law loan debt as one incurred "in connection with the business of" the Debtor.

In its response to the claim objection, Farmers State Bank concedes that "[b]ut for Mr. Zanotti's 'Authorization to Lender' contained in the Commercial Guaranty . . . Claim 7 would be personal to Mr. Zanotti and could not be raised by [Farmers State Bank]." Because the Court finds that the guaranty conferred

no authority for Farmers State Bank to assert Mr. Zanotti's claims, that would seem to end the inquiry. Farmers State Bank also suggests, however, that it had authority to file the Zanotti claim on its own behalf as creditor by assignment. Although not cited by Farmers State Bank or any other party in interest, Rule 3001(e) provides a procedure for filing transferred claims, including claims transferred for security. Fed. R. Bankr. P. 3001(e)(3), (4). For claims transferred for security before a proof of claim is filed, both the transferor and transferee are authorized to file. Fed. R. Bankr. P. 3001(e)(3). For such claims, a statement setting forth the terms of the transfer must also be filed. *Id.*

It is not necessary here to analyze whether the proof of claim filed by Farmers State Bank complies with Rule 3001(e) because, based on the record before the Court, the claim was not assigned to Farmers State Bank. First, the proof of claim, on its face, asserts that it is filed on behalf of Brandon Zanotti, and it is marked as not having been acquired from someone else. The proof of claim is marked elsewhere as being signed by the attorney for Farmers State Bank as Brandon Zanotti's "assignee and attorney in fact or authorized agent," but the notification of assignment letter addressed to the Debtor pertains to the "accounts and general intangibles" of BJZ Law—not Brandon Zanotti—and, as discussed, none of the other documents show that Mr. Zanotti gave a security interest or otherwise assigned the asserted claims to Farmers State Bank.

Farmers State Bank and Brandon Zanotti offer several competing theories for allowing claim 7-1, but each of their arguments is betrayed by the documents upon which it relies. In the absence of a cognizable legal basis and supporting

facts, the Court must conclude that Farmers State Bank did not have actual authority to file claim 7-1 either for itself or for Brandon Zanotti. Because claim 7-1 was not filed by Brandon Zanotti, an agent of Brandon Zanotti, or an assignee of Brandon Zanotti, it must be disallowed. *In re Rosebud Farm, Inc.,* 660 B.R. 222, 260 (Bankr. N.D. Ill. 2024) (claim filed on behalf of creditor by entity without authority violated bankruptcy rules); *In re Williams*, 622 B.R. 54, 57-59 (Bankr. N.D. Ill. 2020) (claim filed by assignee prior to assignment not valid).

## B. Claim 8-1: BJZ Law

According to Farmers State Bank's response to the claim objection, it filed claim 8-1 "based on the authority and rights granted to it by BJZ [Law] in the Commercial Security Agreement executed by BJZ [Law]." The collateral pledged in the commercial security agreement included its inventory, accounts, equipment, fixtures, and general intangibles, which Farmers State Bank says, in turn, includes goodwill and things in action, claims or causes of action that BJZ Law then had or would later acquire. BJZ Law says its 1/3 ownership of the Debtor was collateral for the loan.

The narrative attached to the proof of claim asserts that the commercial security agreement appoints Farmers State Bank as BJZ Law's "irrevocable attorney in fact" for purposes of executing any documents necessary to perfect, amend, or continue Farmers State Bank's security interest. Farmers State Bank also points to the provisions of the commercial security agreement giving it "all the rights of a secured party under the Illinois Uniform Commercial Code" and

"full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in [its] own name or that of [BJZ Law.]"

It is evident from the commercial security agreement that Farmers State Bank holds a broad security interest in property of BJZ Law. The question is the extent of its interest and right to enforce it.[5] Farmers State Bank claims to be asserting rights under the Revised Operating Agreement. The operating agreement, however, predated the commercial security agreement and, in addition to granting BJZ Law certain rights in relation to its membership and participation in the Debtor, imposed key limitations on the transfer of such rights.

The Revised Operating Agreement defines "permitted transfer" as a transfer of a member's ownership interest from that member to another member, the member's majority owner or their family, or any other person approved by all members. Transfers of interests in the Debtor and the admission of new or substituted members are described as "member decisions" that require prior approval of a supermajority of members.[6] Article 14 further provides that "[n]o

_____

[5] Although not discussed by Farmers State Bank, the same provisions cited above regarding the taking of a security interest in commercial tort claims apply to claim 8-1. Farmers State Bank did not acquire a security interest in any commercial tort claim BJZ Law might have against the Debtor because such claims were not identified with specificity in the security agreement and because any such claims arose after the security agreement was signed and would not be subject to the after-acquired-property provisions of the agreement. 810 ILCS 5/9-108(e), 5/9-204(b)(2).

[6] The provision, found in Article 9 of the Revised Operating Agreement, creates an exception to the extent provided in the Buy-Sell Agreement that is incorporated into the Revised Operating Agreement by reference. Article 13 similarly provides that the right of any member to a transfer or buyout of interests shall be governed by the Buy-Sell Agreement. But the Buy-Sell Agreement has not been made a part of the record in this case, and the Court therefore makes no assumptions about whether any provision or exception stated in the Buy-Sell Agreement would apply here. Further, had the parties all agreed, documents could have been prepared and signed to allow BJZ Law to pledge its interest in the Debtor to the bank as the bank now says was intended. But as with other terms of the transaction, it is not at all clear that the parties fully discussed the issues, and they obviously failed to execute documents to create a security interest in BJZ Law's interest in the Debtor. The absence of proper documentation weighs against the bank, the drafter of the documents to secure its loan.

purported transfer of any Interest of [sic] any portion thereof or interest therein, in violation of the terms of this Agreement (including any transfer occurring by operation of law) shall vest the purported transferee with any rights, powers, or privileges hereunder, and no such purported transferee shall be deemed for any purposes as a Member hereunder or have any right . . . to exercise any other rights of a Member hereunder[.]" Finally, Article 17 contains two important provisions regarding third-party beneficiaries. The first provision states that the provisions of the Revised Operating Agreement "are not intended to be for the benefit of and shall not confer any rights on any creditor or other Person (other than a Member in such Member's capacity as Member) to whom any debts, liabilities or obligations are owed by the [Debtor] or any of the Members." The second provision states that "[n]othing contained in this Agreement is intended or shall be deemed to benefit any creditor of the [Debtor] or any Member, and no creditor of the [Debtor] shall be entitled . . . to enforce any right which the [Debtor] or any Member may have against any Member under this Agreement."

"Under Illinois law an assignment constitutes a transfer of some identifiable property, claim or right from assignor to assignee." *In re Weiss*, 376 B.R. 867, 876 (Bankr. N.D. Ill. 2007) (quoting *Raleigh v. Haskell (In re Haskell)*, 1998 WL 809517, at *3 (Bankr. N.D. Ill. Nov. 19, 1998)) (analyzing whether creditor had security interest in context of request for relief from automatic stay). A qualifying condition of assignment of an interest in collateral is that the interest to be assigned is in fact assignable. *Id.* "In addition to the requirement that assigned items be assignable, compliance with an agreement controlling the

procedure for transfer of an interest is also necessary for a proper assignment." *Id.* (emphasis omitted). This comports with the provisions of the Illinois Uniform Commercial Code which state that a security interest attaches to collateral and becomes enforceable against the debtor and third parties with respect to the collateral only if, among other things, "the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party[.]" 810 ILCS 5/9-203(b)(2).

Based on the restrictions on the transfer of rights under the Revised Operating Agreement and the absence of evidence to the contrary, Farmers State Bank's security interest granted by the subsequently executed commercial security agreement did not attach to BJZ Law's membership interest in and related claims against the Debtor and is therefore unenforceable with respect to such membership interest and claims. The Revised Operating Agreement expressly precludes transfers of membership interests, in whole or part, including rights to payment or distribution and all other rights and privileges associated with membership, no matter how acquired, without majority approval. No evidence of any such approval has been offered here, and the agreement otherwise makes clear that its provisions are not to be construed as conferring any rights on any creditor or other non-member to whom any debts, liabilities, or obligations are owed by the Debtor or any of its members. Without an attached and enforceable security interest in BJZ Law's membership in and associated claims against the Debtor, neither the commercial security agreement nor the Illinois Uniform Commercial Code supplies the needed authority for

Farmers State Bank to deal with or assert those claims on BJZ Law's behalf or its own.

Further, like claim 7-1, there is nothing in the record that suggests claim 8-1 was filed as a transferred claim under Bankruptcy Rule 3001(e). The proof of claim itself says it was filed on behalf of BJZ Law and is marked as not having been acquired from another. The fact that it was also marked as being filed by BJZ Law's assignee and attorney in fact is not supported by the documents attached to the claim or otherwise in the case record; in light of the Court's finding that no security interest attached to BJZ Law's membership interests, the notification of assignment letter addressed to the Debtor pertaining to the "accounts and general intangibles" of BJZ Law has no probative value. Based on the record before it, the Court concludes that Farmers State Bank did not have actual authority to file proof of claim 8-1.

Finally, the Court does not give credence to BJZ Law's position that it does not dispute but rather supports the claim filed by Farmers State Bank. Although the law of agency generally permits the ratification or adoption of unauthorized acts after the fact, such ratification is not effective when it takes place after a deadline. *In re W.R. Grace & Co.,* 366 B.R. 302, 306 (Bankr. D. Del. 2007) (citing *Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994), and RESTATEMENT (SECOND) OF AGENCY §90 (1958)); *see also Williams*, 622 B.R. at 57-59 (proof of claim filed by non-creditor not saved by subsequent assignment). Here, BJZ Law's support of claim 8-1 in response to the Debtor's claim objection comes well after the claims bar date. It also comes on the heels of BJZ Law's

motion for leave to file proof of claim after the bar date in which BJZ Law states that it intended to timely file a claim on its own behalf but accidentally failed to do so. Under the circumstances, BJZ Law's support for claim 8-1 after missing the deadline to file a claim on its own behalf carries little weight.

Claim 8-1 was improperly filed by Farmers State Bank and is therefore defective. Because the claim was not filed by BJZ Law, an agent of BJZ Law, or another entity entitled to file the claim by assignment, it must be disallowed. *Rosebud Farm,* 660 B.R. at 260; *Williams,* 622 B.R. at 58-59.

## IV.    Conclusion

The claim objections here show the importance of all parties paying close attention to the claims process in bankruptcy cases. Farmers State Bank did little research before acting as an unauthorized volunteer and filing claims for Mr. Zanotti and BJZ Law. Because its attorneys had not thought through or researched the issues raised by the Bankruptcy Code and Rules—as was their duty under Bankruptcy Rule 9011(b)—Farmers State Bank filed the claims based on the wholly mistaken belief that creditors could file claims for other creditors regardless of their relationship or the circumstances involved. Once disabused of that position, Farmers State Bank was left scrambling to come up with a cogent argument in support of the claims it filed; it failed to come up with any such argument. The problems here were compounded by Mr. Zanotti and BJZ Law failing to file their own claims allegedly due to clerical errors by their attorney and by the Debtor's attorneys failing to identify the procedural problems

with the claims until raised by the Court.[7] None of what occurred here was necessary, and a lot of time and money has been wasted by all the parties on reviewing the two claims. Although Farmers State Bank's attorneys created the problems here, the bank does not suffer from the result as its claim has not been disallowed through this process and likely will be allowed in whole or substantial part as the case progresses. That result for the bank only provides further evidence of the wastefulness of what has occurred here; it could have obtained the results it wanted for itself without filing the unauthorized claims.

The Court found no factual or legal basis for the claims filed by Farmers State Bank on behalf of Brandon Zanotti and BJZ Law. Both claims will therefore be disallowed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ENTERED: July 10, 2025

/s/ Mary P. Gorman

_____

UNITED STATES BANKRUPTCY JUDGE

---

[7] The confirmation hearing on the Debtor's first amended plan is set for later this month. Key to confirmation is a tally of the ballots of creditors. To be counted, a ballot must be filed by a creditor holding an allowed claim. 11 U.S.C. §1126(a). Identifying what claims are on file, who holds those claims, whether the claims are allowed or objected to, and other related issues is an important part of obtaining confirmation or successfully objecting to confirmation of a plan. The Zanotti parties and the Debtor should be focused on these issues.